Nathan K. Low (SBN 299587)
E-Mail: nlow@fisherphillips.com
Elizabeth T. Ferguson (SBN 318934)
E-Mail: etferguson@fisherphillips.com
Phil N. Bui (SBN 328471)
E-Mail: pnbui@fisherphillips.com
Jonathan G. Chang (SBN 34778)
E-Mail: jchang@fisherphillips.com
FISHER & PHILLIPS LLP
1 Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: (415) 490-9000
Facsimile: (415) 490-9001

Attorneys for Defendant
WAYFAIR LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA JARACUARO, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAYFAIR LLC; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.:<br><br>(Removed from Riverside County Superior Court, Case No. CVRI2507389)<br><br>**DEFENDANT'S NOTICE AND PETITION FOR REMOVAL OF ACTION PURSUANT TO 28. U.S.C. §§ 1332 (D)(2) AND (5)**<br><br>Complaint Filed: December 31, 2025<br>Removal: April 13, 2026<br>Trial Date: Not Set |

## TABLE OF CONTENTS

I.     PROCEDURAL HISTORY ....................................................................................1

II.    TIMELINESS OF REMOVAL ............................................................................2

III.   NOTICE PROVIDED TO STATE COURT AND PLAINTIFF ...........................2

IV.    REMOVAL IS BASED ON CAFA JURISDICTION ...........................................2

    A.    Size of the Class ..........................................................................................3

    B.    Minimal Diversity .......................................................................................3

    C.    Amount in Controversy ...............................................................................4

    D.    Baseline Facts .............................................................................................5

    E.    Minimum Wage Claims ...............................................................................6

    F.    Overtime Claims .........................................................................................7

    G.    Meal Period Claims ....................................................................................7

    H.    Rest Period Claims ......................................................................................9

    I.    Wage Statement Penalties ........................................................................10

    J.    Waiting Time Penalties .............................................................................10

    K.    Reimbursement Claims .............................................................................11

    L.    Attorney's Fees .........................................................................................11

    M.    Conclusion on Amount in Controversy ....................................................12

V.    VENUE .............................................................................................................12

VI.   SERVICE OF NOTICE OF REMOVAL ON STATE COURT .........................13

FP 62401000.3

## TABLE OF AUTHORITIES

**Cases**

*Bryant v. NCR Corp.*,
284 F.Supp.3d 1147, 1151 (S.D. Cal. 2018) ..................................................8

*Chavez v. JPMorgan Chase & Co.*,
888 F.3d 413, 414-15 (9th Cir. 2018) .........................................................11

*Cohn v. Petsmart, Inc.*,
281 F.3d 837, 839-840 (9th Cir. 2002) ..........................................................4

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81, 89 (2014) ....................................................................................4

*Evers v. La-Z-Boy Inc.*,
No. 21CV2100-LL-BLM, 2022 WL 2966301, at *5 (S.D. Cal. Jul. 27, 2022) ............6

*Galt G/S v. JSS Scandinavia*,
142 F.3d 1150, 1155-56 (9th Cir. 1998) .......................................................11

*Ibarra v. Manheim Investments, Inc.*,
775 F.3d 1193, 1197 (9th Cir. 2015) ..............................................................5

*Kanter v. Warnter-Lambert Co.*,
265 F.3d 853, 857 (9th Cir. 2001) ..................................................................3

*Kantor v. Wellesley Galleries, Ltd.*,
704 F.2d 1088, 1090 (9th Cir. 1983) ..............................................................3

*Lewis v. Moss*,
797 F.2d 747, 751 (9th Cir. 1986) ..................................................................3

*Lucas v. Michael Kors (USA), Inc.*,
No. CV181608MWFMRWX, 2018 WL 2146403, at *10 (C.D. Cal. May 9, 2018)...12

*Mamika v. Barca*,
68 Cal.App.4th 487 (1998) ............................................................................11

*Marroquin v. Wells Fargo, LLC*,
No. 11CV163-L BLM, 2011 WL 476540, at *1 (S.D. Cal. Feb. 3, 2011)......................3

*Mintzis v. Scott*,
No. 2:14-CV-01799-CAS, 2014 WL 3818104, at *5 (C.D. Cal. Jul. 30, 2014) ............3

*Mitchell v. United States*,
88 U.S. 350, 353 (1874) ..................................................................................3

*Mondragon v. Capital One Auto Fin.*,
736 F.3d 880, 886 (9th Cir. 2013) ..................................................................3

*Sanchez v. Abbot Lab'ys*,
No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, *4 (E.D. Cal. Jun. 30, 2021)..........8

FP 62401000.3

*Serrieh v. Jill Acquisition LLC,*
 707 F.Supp.3d 968, 977-75 (E.D. Cal. 2023) .......................................................8

*Stafford v. Dollar Tree Stores, Inc.,*
 No. 2:13-CV-01187-KJM, 2014 WL 1330675, at *2 (E.D. Cal. Mar. 28, 2014) .....4, 12

*Stevenson v. Dollar Tree Stores, Inc.,*
 No. 2:11-cv-1433, 2011 WL 4928753 (E.D. Cal. Oct. 17, 2011) ................................12

*Tajonar v. Echosphere, L.L.C.,*
 No. 14CV2732-LAB RBB, 2015 WL 4064642, at *3 (S.D. Cal. Jul. 2, 2015) ..........8, 9

**Statutes**

28 U.S.C. § 84(c) .....................................................................................................12

28 U.S.C. § 1332(d) ...................................................................................1, 2, 3, 4, 12

28 U.S.C. § 1441(a) ...........................................................................................12, 13

28 U.S.C. § 1446(a) .................................................................................................12

28 U.S.C. § 1446(b) ..................................................................................................2

Cal. Labor Code § 203(a)........................................................................................10

Cal. Labor Code § 226.7(c).....................................................................................8, 9

DEFENDANT'S NOTICE AND PETITION FOR REMOVAL OF ACTION
PURSUANT TO 28. U.S.C. §§ 1332 (D)(2) AND (5)

FP 62401000.3

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant WAYFAIR LLC ("Defendant" or "Wayfair") hereby files this Notice of Removal pursuant to 28 U.S.C. § 1332 based on the Class Action Fairness Act of 2005 ("CAFA"). Defendant states that removal is proper for the following reasons:

## I. PROCEDURAL HISTORY

1. On December 31, 2025, Plaintiff Vanessa Jaracuaro ("Plaintiff" or "Jaracuaro"), on behalf of herself and on behalf of all persons similarly situated, filed a class action complaint (the "Complaint") in the California Superior Court for the County of Riverside entitled *Vanessa Jaracuaro, individually and on behalf of all others similarly situated v. WAYFAIR LLC; and DOES 1 through 20, inclusive*, Case No. CVRI2507389 ("State Court Action"). The Complaint purports to state causes of action on behalf of Plaintiff and the putative class members for: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Reimburse Business Expenses; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Pay All Wages Due Upon Separation of Employment; and (8) Violation of Bus. & Prof. Code § 17200, *et seq.*

2. On March 12, 2026, Plaintiff initiated service of the Summons and Complaint and notices and forms on Defendant. A true and correct copy of these documents is attached as **Exhibit A** to the Appendix, filed concurrently herewith. *See* Declaration of Nathan K. Low in Support of Defendant's Petition for Removal of Action Pursuant to 28 U.S.C. §§ 1332(d)(2) and (5) ("Low Decl."), ¶¶ 2-4.

3. On April 13, 2026, Defendant filed and served its Answer to the Complaint. A true and correct copy of this document is included in **Exhibit A** to the Appendix. Low Decl., ¶ 3.

4. The documents attached as **Exhibit A** to the Appendix constitute all

FP 62401000.3

pleadings, process, and orders served on and by Defendant in the State Court Action.

## II.   TIMELINESS OF REMOVAL

5.     The 30-day removal period runs when the party seeking to remove receives a "paper from which it may first be ascertained that the case is . . . removable." 28 U.S.C. § 1446(b)(3).  Plaintiff served the Summons and Complaint on Defendant on March 12, 2026.  Low Decl. at ¶ 2.  Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is therefore timely filed as it is filed within thirty (30) days after Defendant was effectively served with the Summons and Complaint and within one year after commencement of this action.

## III.   NOTICE PROVIDED TO STATE COURT AND PLAINTIFF

6.     Written notice of this Notice of Removal to the United States District Court for the Central District of California will be served on Plaintiff's counsel of record at Aegis Law Firm, PC.  A true and correct copy of Defendant's Notice to Adverse Party of Removal of Civil Action to Federal District Court is attached as **Exhibit B** to the Appendix (without exhibits because the exhibit is this Notice), filed concurrently herewith. *See* Low Decl., ¶ 5.

7.     In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court in the Superior Court for the State of California, County of Riverside.  A true and correct copy of Defendant's Notice to the Superior Court of Removal of Civil Action to Federal District Court is attached as **Exhibit C** to the Appendix (without exhibits because the exhibit is this Notice), filed concurrently herewith. *See* Low Decl., ¶ 6.

8.     Proofs of Service of Defendant's Notice of Removal to Federal District Court to Adverse Parties and Notice of Removal to the Superior Court of the State of California, County of Riverside will be filed with this Court immediately. *See* Low Decl., ¶ 7.

## IV.   REMOVAL IS BASED ON CAFA JURISDICTION

9.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2) and (5).  CAFA provides that a district court shall have original jurisdiction over a class action if (1) the matter in

controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the action involves one hundred (100) or more putative class members; and (3) any member of the putative class is a citizen of a state different from any defendant (minimal diversity).

### A.   Size of the Class

10.   Wayfair has employed approximately 3,347 putative class members during the class period as measured from Wayfair data for the purposes of this submission to the Court during the period of December 1, 2024 to March 5, 2026 ("Class Period") claimed to be at issue in the Complaint.  Complaint, ¶ 20; Declaration of Valerie Bonilla in Support of Defendant's Petition for Removal of Action Pursuant to 28 U.S.C. §§ 1332(d)(2) and (5) ("Bonilla Decl."), ¶ 7.  This satisfies the numerosity requirement under CAFA as it exceeds the minimum of 100 class members.

### B.   Minimal Diversity

11.   Minimal diversity of citizenship is also established under CAFA.  To establish citizenship for diversity purposes, a natural person must be domiciled in a particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Natural persons are domiciled in the places they reside with the intent to remain or to which they intend to return.  *Kanter v. Warnter-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  A natural person's residence is prima facie evidence of domicile.  *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013); *Marroquin v. Wells Fargo, LLC*, No. 11CV163-L BLM, 2011 WL 476540, at *1 (S.D. Cal. Feb. 3, 2011).  In fact, it is presumed that a natural person's residence is their domicile, and the party resisting this presumption bears the burden of producing contrary evidence.  *Lewis v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).  Moreover, an existing domicile is presumed to continue.  *Mitchell v. United States*, 88 U.S. 350, 353 (1874) ["[D]omicile, once acquired, is presumed to continue until it is shown to have been changed."]; *Mintzis v. Scott*, No. 2:14-CV-01799-CAS, 2014 WL 3818104, at *5 (C.D. Cal. Jul. 30, 2014).

12.   Here, the putative class of approximately 3,347 putative class members

FP 62401000.3

contains citizens of various states including, Arizona, Nevada, and Texas whereas Wayfair is a limited liability company organized in the State of Delaware with its principal place of business in Boston, Massachusetts.  Bonilla Decl., ¶¶ 5, 7.

13.    At all times alleged in the Complaint, at the time of the filing of this action, and at the time this Notice of Removal was filed, the sole member of Wayfair is SK Retail, Inc. ("SK Retail"). Bonilla Decl., ¶ 4.  SK Retail is now, and ever since this action commenced has been, incorporated under the laws of the State of Massachusetts.  *Id.*  Moreover, Boston, Massachusetts is the site of SK Retail's corporate headquarters and executive offices, where its high-level officers direct, control, and coordinate its activities.  *Id.*  SK Retail's executive and administrative functions, including corporate financing and accounting, are directed from Boston, Massachusetts.  *Id.*  SK Retail's corporate decisions, including operational, executive, administrative and policymaking, are made from its Boston, Massachusetts headquarters, including human resources, finance and accounting, treasury, legal, payroll, and safety.  *Id.*

14.    Accordingly, Wayfair is a citizen of the state of Massachusetts and not California.

15.    Under Section 1332(d)(2) of the CAFA, only one member of the putative class must be a citizen of a state different from any defendant.  Because Wayfair is a citizen of Massachusetts and numerous members of the putative class are citizens of different states, the minimal diversity requirement of the CAFA is met.

### C.    **Amount in Controversy**

16.    Removal is appropriate when it is more likely than not that the amount in controversy exceeds the jurisdictional requirement, which under the CAFA is $5,000,000 in the aggregate. See, e.g., *Stafford v. Dollar Tree Stores, Inc.*, No. 2:13-CV-01187-KJM, 2014 WL 1330675, at *2 (E.D. Cal. Mar. 28, 2014); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-840 (9th Cir. 2002).

17.    The U.S. Supreme Court in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) held that a defendant's notice of removal under the CAFA

FP 62401000.3

need include only a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Should the plaintiff challenge defendant's assertion of the amount in controversy, at that stage as part of a remand challenge, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million, where, as here, the damages are unstated in the complaint. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

18.     Although Wayfair reserves all rights and defenses and denies that this action is suitable for class action treatment, the amount in controversy requirement is derived from the complaint as pled, which in this class action, in the aggregate, places in controversy an amount well in excess of $5,000,000.

19.     The amount of controversy in this matter is, based on a conservative estimate as set forth in greater detail below:

**D.     Baseline Facts**

20.     During the Class Period (i.e., December 1, 2024 to March 5, 2026), Wayfair has employed approximately 3,347 class members ("Putative Class") based on the class defined in the Complaint. Bonilla Decl., ¶ 7; Complaint, ¶ 20.

21.     During the Class Period, the Putative Class typically worked an estimated 88,001 workweeks and that most of these employees regularly worked at least 4 workdays per workweek for at least 8 hours per workday. Bonilla Decl., ¶ 8.

22.     For purposes of this removal, Wayfair has applied California's minimum wage for 2025 of $16.50 to calculate the theoretical damages at issue.

23.     The Putative Class has a relatively high turnover figure due to the nature of the work and entry level of most of the employees, with approximately 1,967 members of the Putative Class leaving their employment with Wayfair from December 1, 2024 to March 5, 2026. Bonilla Decl., ¶ 9.

24.     During the period from December 31, 2024 to March 5, 2026, Defendant issued approximately 44,731 wage statements to the 3,347 members of the Putative Class who were employed during this period. Bonilla Decl., ¶ 10.

25.     During the Class Period, the Putative Class worked approximately 88,001 workweeks, and 352,004 workdays/shifts based on the minimum calculation of 4 workdays/shifts per workweek.  Bonilla Decl., ¶ 8. While many putative class members may have worked more workdays than that, this figure is provided here as a conservative floor for purposes of the analysis in this removal that is not reasonably subject to dispute.

## E.     Minimum Wage Claims

26.     Plaintiff alleges that Defendants failed to pay minimum wages to Plaintiff and the Putative Class in violation of California state wage and hour laws by failing to pay them for all hours worked at minimum wage.  Complaint, ¶¶ 29, 37-43.

27.     Plaintiff further alleges that, "Defendants' policies and practices violated state law in at least the following respects . . . Failing to pay all wages earned (including minimum wage and overtime wages) to Plaintiff and Class Members at the proper rate and in a timely manner in violation of Labor Code §§ 204, 510, 1194, 1194.2, 1197, 1198." Complaint, ¶ 95(a).

28.     Plaintiff's allegations that Defendant failed to pay the Putative Class for all hours worked as a matter of "policy and practice" would conservatively result in potential damages of one hour of work unpaid for 25% of shifts worked during the class period.  See, e.g., *Evers v. La-Z-Boy Inc.*, No. 21CV2100-LL-BLM, 2022 WL 2966301, at *5 (S.D. Cal. Jul. 27, 2022) ["District courts in this circuit have found violation rates ranging from 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation[s]."]  Thus, it is conservative to state for purposes of determining the amount in controversy for this removal, applying California's current minimum wage (which Plaintiff concedes is lower than Class Members' rates of pay), that total liability is $1,161,613.20 (20% of all workdays/shifts (as a very conservative estimate) x 1 hour underpaid at the minimum wage owed ($16.50/hr.)).

29.     Furthermore, Plaintiff alleges liquidated damages pursuant to California Labor Code section 1194.2, which if proven places an amount in controversy that doubles the minimum wage violation to a total amount in controversy for minimum wage violations

FP 62401000.3

to the Putative Class at **$2,323,226.40** (minimum wage liability x 2). *See* Complaint, ¶ 43.

### F. Overtime Claims

30. Plaintiff alleges that Defendants failed to pay overtime wages to Plaintiff and the Putative Class in violation of California state wage and hour laws by failing to pay them for all overtime hours worked at the correct overtime rates. Complaint, ¶¶ 29, 44-55.

31. Plaintiff further alleges that, "Defendants' policies and practices violated state law in at least the following respects . . . Failing to pay all wages earned (including minimum wage and overtime wages) to Plaintiff and Class Members at the proper rate and in a timely manner in violation of Labor Code §§ 204, 510, 1194, 1194.2, 1197, 1198." Complaint, ¶ 95(a).

32. While Plaintiff has not pinpointed any violation that occurred to the Plaintiff or any Putative Class Member, a reasonable extrapolation from Plaintiff's unpaid wages claim suggests that the time unpaid for overtime is equal to or consistent with the other unpaid time as the theories of liability (minimum wages, non-compliant meal periods, etc.).

33. Accordingly, it is a reasonable interpretation of Plaintiff's complaint that she seeks an overtime premium for those same unpaid hours, which as paid at 0.5x the amount unpaid, equals an additional floor of liability in the amount of an overtime premium at **$580,806.60** ($16.50/hr. x 1 hr. x 0.5 premium multiplied by 70,400.80, which is 20% percent of Class Members' workdays). Very likely Plaintiff is seeking a higher amount of unpaid overtime; thus, this is a conservative estimate.

### G. Meal Period Claims

34. The Complaint alleges that "[d]uring the relevant time period, Plaintiff and Class Members worked more than five (5) or ten (10) hours and did not receive all compliant meal periods because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period." Complaint, ¶ 61.

35. Plaintiff does not specify how many non-compliant breaks are at issue but instead attributes liability based on general allegations that "Defendants' policies and practices [resulted in] . . . Failing to provide compliant meal periods without paying

Plaintiff and Class Members premium wages for every day said meal periods were not provided in violation of Labor Code §§ 226.7 and 512." Complaint, ¶ 95(b).

36.   The Complaint seeks the recovery of one hour of pay at the employee's regular rate of pay for each workday where a meal period violation occurred. Complaint, ¶¶ 30, 62-64. Specifically, Labor Code section 226.7(c) provides a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." The meal period claim brought under the Unfair Competition Law is ordinarily subject to a four-year period of limitations, though a shorter period is alleged here. *See Tajonar v. Echosphere, L.L.C.*, No. 14CV2732-LAB RBB, 2015 WL 4064642, at *3 (S.D. Cal. Jul. 2, 2015); Complaint, ¶ 20.

37.   Based on the allegations that Defendant had "policies and/or practices" that resulted in these violations, Defendant continues its conservative approach, for the purpose of this analysis only, that the Putative Class members were not provided one meal period 20% percent of their workdays. *See Serrieh v. Jill Acquisition LLC*, 707 F.Supp.3d 968, 977-75 (E.D. Cal. 2023) [finding defendant's violation rate of 24% reasonable where plaintiff alleged that defendant from time to time failed to provide legally required off-duty meal breaks]; *Bryant v. NCR Corp.*, 284 F.Supp.3d 1147, 1151 (S.D. Cal. 2018) [finding defendant's violation rate of 60% reasonable when the complaint is indeterminate with respect to violation rates]; *Sanchez v. Abbot Lab'ys,* No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, *4 (E.D. Cal. Jun. 30, 2021) [finding a 60% violation rate reasonable where Plaintiff alleges a "pattern and practice" of meal period violations]; *Alfaro v. Banter by Piercing Pagoda*, No. SACV 22-00266-CJC(ADSx), 2022 WL 1284823, *3 (C.D. Cal. Apr. 29, 2022) ["A 25% violation rate is entirely reasonable considering the plain text of Plaintiff's allegations place some, but not all, of the meal and rest break periods in controversy."]; *Olson v. Becton, Dickinson & Co.*, No. 19-cv-00865-MMA-BGS, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) [finding a 25% violation rate to be appropriate].

38.   Based thereon, the premium pay for the 3,347 employees is calculated as

FP 62401000.3

approximately **$1,161,613.20** (the 2025 California minimum wage rate of $16.50 multiplied by 70,400.80, which is 20% of their workdays).

### H.    Rest Period Claims

39.    The Complaint alleges that "[d]uring the relevant time period, Plaintiff and Class Members did not receive all ten (10) minute rest periods for every four (4) hours or major fraction thereof worked, including working in excess of ten (10) hours, because they were required to work through their rest periods and/or were not authorized to take their rest periods." Complaint, ¶ 68.

40.    Plaintiff, again, does not specify how many non-compliant breaks are at issue but instead attributes liability based on general allegations that "Defendants' policies and practices [resulted in] . . . Failing to authorize or permit compliant rest breaks without paying Plaintiff and Class Members premium wages for every day said rest breaks were not authorized or permitted in violation of Labor Code § 226.7." Complaint, ¶ 95(c).

41.    The Complaint seeks the recovery of one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not provided. Complaint, ¶¶ 31, 70-71.  Specifically, Labor Code section 226.7(c) provides a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."  The rest period claim brought under the Unfair Competition Law is ordinarily subject to a four-year period of limitations, though a shorter period is alleged here.  *Tajonar*, 2015 WL 4064642, at *3; Complaint, ¶ 20.

42.    The same math applies as with the meal period claim set forth in the prior section, as Defendant conservatively assumes for the purpose of this analysis only that the Putative Class members were not allowed one rest period 20% of their workdays, based on the allegation that Defendant had a "policy" of requiring members of the Putative Class to forgo their rest breaks. Based thereon, the premium pay for missed meal periods that is at controversy for the Putative Class is calculated as **$1,161,613.20** (the 2025 California minimum wage rate of $16.50 multiplied by 70,400.80, which is 20% of their workdays).

## I.  Wage Statement Penalties

43.    The Complaint alleges that during the relevant time period, Plaintiff and the Putative Class Members did not receive compliant wage statements since the wage statements provided allegedly failed "to correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiff and Class Members." Complaint, ¶ 82.

44.    As with the other claims, Plaintiff alleges that "Defendants' policies and practices [resulted in] . . . Failing to provide Plaintiff and Class Members with accurate itemized wage statements in violation of Labor Code § 226." Complaint, ¶ 95(e).

45.    Plaintiff alleges that because of Defendant's knowing and intentional failure to comply with Labor Code § 226, Plaintiff and members of the Putative Class are entitled to penalties under the California Labor Code as provided in Labor Code § 226(e). Complaint, ¶¶ 83-84. Those penalties equal $50 for the first violating pay period, and $100 per subsequent violation to an aggregate of $4,000 per putative class member. *Id.* at ¶ 84.

46.    During the period from December 31, 2024 through March 5, 2026, Defendant issued approximately 44,731 wage statements to members of the Putative Class. Bonilla Decl., ¶ 10. There are 3,347 members of the class during this period, and thus an equivalent number of "first" violated pay periods at issue, with the remainder being subsequent pay periods. Thus, a calculation of the amount in controversy for the Putative Class is (44,731 x $100) – (3,347 x $50) = $4,305,750. Conservatively applying this to only 50% of the class, which Plaintiff is almost certainly unwilling to cap accordingly, that figure is **$2,152,875**.

## J.  Waiting Time Penalties

47.    California law provides that if an employer willfully fails to pay the wages of an employee who is discharged or quits, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid … but the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a). The Complaint alleges that Defendant regularly failed to pay Plaintiff and members of the Putative Class their earned

FP 62401000.3

wages upon termination and accordingly owe waiting time penalties pursuant to Labor Code § 203.  Complaint, ¶¶ 88, 90.

48.    Plaintiff further alleges that, "Defendants' policies and practices [resulted in] . . . Failing to timely pay all earned wages to the members of the Waiting Time Subclass upon separation of employment in violation of Labor Code §§ 201, 202, and 203." Complaint, ¶ 95(f).

49.    Given the allegations, it is reasonable to assume (for purposes of this removal only), that members of the Putative Class who left their employment with Defendant, suffered at least one violation and were therefore not paid all wages owed upon the separation of employment. From December 1, 2024 through March 5, 2026, 1,967 members of the Putative Class left their employment with Defendant.  Bonilla Decl., ¶ 9.

50.    The amount in controversy on this claim is $7,789,320.00. This figure is based on daily rate of pay ($16.50/hr x 8 hours = $132) x 30 days = $3,960 per sub class member. *See Mamika v. Barca*, 68 Cal.App.4th 487 (1998) (daily rate calculated by multiplying hourly rate by hours worked each day, and then the daily rate is multiplied by the number of days of nonpayment, up to 30 days). This number is then multiplied by the 1,967 former Wayfair employees.  Even conservatively applying this to only 50% of the subclass of former employees, which Plaintiff is almost certainly unwilling to cap accordingly, the amount in controversy on this claim would equal **$3,894,660**.

## K.    Reimbursement Claims

51.    Plaintiff's Fifth Cause of Action claims unpaid business expenses for members of the Putative Class without providing any detail as to what expenses were not paid, when, why, or in any frequency.  Complaint, ¶¶ 32, 72-79.  This claim would place some amount in controversy, but it is too speculative to calculate based on the pleading.

## L.    Attorney's Fees

52.    When the underlying substantive law provides for an award of attorneys' fees, the removing party may include that amount in its calculation of the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *see also Chavez v.*

11

FP 62401000.3

*JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas v. Michael Kors (USA), Inc.*, No. CV181608MWFMRWX, 2018 WL 2146403, at *10 (C.D. Cal. May 9, 2018).

53.     Plaintiff has sought attorneys' fees in the Complaint which in class action cases is ordinarily measured by the Court as a percentage as the overall amount sought to be recovered.  A conservative benchmark is a 25 percent fee award for attorneys' fees calculated on a percentage of the recovery basis.  *Stafford v. Dollar Tree Stores, Inc.*, 2014 WL 1330675, at *9; *Stevenson v. Dollar Tree Stores, Inc.*, No. 2:11-cv-1433, 2011 WL 4928753 (E.D. Cal. Oct. 17, 2011), at *5.  Thus applied, the amount in controversy is increased by 25% to account for Plaintiff's sought recovery of fees.

### M.     Conclusion on Amount in Controversy

54.     In the aggregate among Plaintiff's causes of action, and based on Defendant's conservative application here, the amount in controversy for the class as alleged in premium pay and penalties on the various claims is: **$11,274,794.40** even when discounting the frequency of the claimed liability to account for allegations of "time to time" and "policies and practices", which surely Plaintiff is unwilling to so cap.  To that figure an additional 25% can be included to account for the benchmark for attorney's fees in controversy.  Thus, the amount that Plaintiff has placed in controversy in this class action is well in excess of the jurisdictional threshold of $5,000,000.

55.     Accordingly, minimal diversity, class size, and the amount in controversy under the CAFA are satisfied pursuant to 28 U.S.C. § 1332(d), and therefore Wayfair has properly removed this State Court Action to this Court.

### V.   VENUE

56.     Plaintiff originally filed this action in the Superior Court of the State of California, County of Riverside.  The County of Riverside lies within the jurisdiction of the United States District Court, Central District of California.  Therefore, venue also lies in the Central District of this Court pursuant to 28 U.S.C. §§ 84(c), 1441(a), and 1446(a). This Court is the United States District Court for the district within which the State Court

FP 62401000.3

Action is pending.  Thus, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

## VI.   SERVICE OF NOTICE OF REMOVAL ON STATE COURT

57.   A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Riverside, as required under 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Riverside, to the United States District Court for the Central District of California.

Dated: April 13, 2026                    FISHER & PHILLIPS LLP


By: */s/ Nathan K. Low*
Nathan K. Low
Elizabeth T. Ferguson
Phil N. Bui
Jonathan G. Chang

Attorneys for Defendant
WAYFAIR LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for DEFENDANT WAYFAIR LLC, certifies that this brief contains 4,971 words, which complies with the word limit of L.R. 11-6.1 (7,000 words).

Dated: April 13, 2026                    FISHER & PHILLIPS LLP


By: */s/ Nathan K. Low*
Nathan K. Low

DEFENDANT'S NOTICE AND PETITION FOR REMOVAL OF ACTION
PURSUANT TO 28. U.S.C. §§ 1332 (D)(2) AND (5)

FP 62401000.3